UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL HOLLIS,

                Petitioner,

v.                                           Case No. 3:21-cv-383-BJD-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
and FLORIDA ATTORNEY GENERAL,

                Respondents.
_____

## ORDER

## I. STATUS

Petitioner, Michael Hollis (Hollis), an inmate of the Florida penal system, initiated this action by filing a *pro se* Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1; Petition). The Petition challenges a 2015 state court (Duval County, Florida) conviction for armed burglary while wearing a mask, possession of a firearm by a convicted felon, and possession of less than twenty (20) grams of cannabis. *Id.* at 1. In his Petition, Hollis raises one ground for habeas relief as follows:

> Defense counsel rendered ineffective assistance for misadvising Petitioner on the remaining[-]in / intent element of burglary and the possible defense thereto, resulting in Petitioner's unknowing and involuntary entry of a guilty plea. The result was a violation

of Petitioner's U.S. constitutional rights to due process and effective assistance of counsel.

*Id.* at 5. Respondents filed an Answer in Response to the Order to Show Cause (Doc. 4; Response),[1] and Petitioner filed a Reply to the Response (Doc. 7; Reply). Upon review, no evidentiary proceedings are warranted in this Court.[2]

## II. STANDARD OF REVIEW

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions

---

[1] The Court refers to the exhibits attached to the Response as "Resp. Ex.," and uses the pagination of CM/ECF. To clarify, Resp. Ex. A1 is filed as Doc. 4-1; Resp. Ex. A2 is filed as Doc. 4-2; Resp. Ex. B is filed as Doc. 4-3; Resp. Ex. C is filed as Doc. 4-4; Resp. Ex. D is filed as Doc. 4-5; and Resp. Ex. E is filed as Doc. 4-6.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." *Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318 (11th Cir. 2016) (citing *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* The Court finds that "further factual development" is unnecessary. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

in the state criminal justice systems, and not as a means of error correction.'"
*Id.* (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. *See Marshall v. Sec'y Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." *Id.* § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair[-]minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* [at 102] (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 18 (2003); *Lockyer*, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

*Bishop v. Warden, GDCP*, 726 F.3d 1243, 1253–54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. *See* 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly

present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that *Boerckel* applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365–366; *Boerckel*, 526 U.S. at 845.

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal citations modified).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas

5

review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 747–748 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84–85 (1977). A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. *See, e.g., Walker v. Martin*, 562 U.S. 307, 316 (2011); *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. *See Coleman*, 501 U.S. at 750.

*Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012) (internal citations modified). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice:

> [T]he procedural default "must result from some objective factor
> external to the defense that prevented [him] from raising the claim
> and which cannot be fairly attributable to his own conduct."
> *McCoy v. Newsome*, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting
> *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Under the prejudice
> prong, [a petitioner] must show that "the errors at trial actually
> and substantially disadvantaged his defense so that he was denied
> fundamental fairness." *Id.* at 1261 (quoting *Carrier*, 477 U.S. at
> 494).

*Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations modified).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains
> yet another avenue for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an extraordinary case,
> where a constitutional violation has probably resulted in the
> conviction of one who is actually innocent, a federal habeas court
> may grant the writ even in the absence of a showing of cause for
> the procedural default." *Carrier*, 477 U.S. at 496. "This exception
> is exceedingly narrow in scope," however, and requires proof of
> actual innocence, not just legal innocence. *Johnson v. Alabama*,
> 256 F.3d 1156, 1171 (11th Cir. 2001).

*Ward*, 592 F.3d at 1157 (internal citations modified). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." *Johnson v. Alabama*,

256 F.3d 1156, 1171 (11th Cir. 2001) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. *Schlup*, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance.  *Strickland*, 466 U.S. at 687.  As explained in *Richter*:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness."  466 U.S. at 688.  A court considering a claim of ineffective assistance must apply a "strong

presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

*Richter*, 562 U.S. at 104 (internal citations modified).

The two-part *Strickland* test applies to challenges to the validity of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The petitioner must still demonstrate that counsel's performance was deficient. *See id.* at 56-59; *Lynch v. Sec'y Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015). To establish prejudice, however, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted); *Lynch*, 776 F.3d at 1218.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward*, 592 F.3d at 1163. Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citing *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000)).   As stated in *Strickland*: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quotation marks omitted).  If there is "any reasonable argument that counsel satisfied *Strickland*'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. *Richter*, 562 U.S. at 105.  As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).  "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689).   "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Evans v. Sec'y, Dep't*

10

*of Corr.*, 703 F.3d 1316, 1333–35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

### III. PERTINENT FACTS AND PROCEDURAL HISTORY

On January 13, 2015, Hollis was charged with: (1) armed burglary while wearing a mask; (2) possession of a firearm by a convicted felon; and (3) possession of less than twenty (20) grams of cannabis. Resp. Ex. A1 at 29. On May 27, 2015, he entered a guilty plea to all charges.[3] *See, e.g.*, *id.* at 38–39, 118. Simultaneously with his guilty plea, Hollis also signed a Waiver of Presentence Investigation Report. *Id.* at 40.

According to the plea form, Hollis acknowledged he was advised of the nature of the charges, the range of maximum allowable punishments, and all possible defenses. *Id.* at 38. He further acknowledged: (1) he entered the guilty plea "freely and voluntarily"; (2) he was not "offered any hope of reward, better treatment, or certain type of sentence to get [him] to enter this plea"; (3) he was not "promised by anyone, including [his] attorney, that [he] would actually serve any certain amount of time"; and (4) he was not "threatened, coerced, or intimidated by any person, including [his] attorney, in any way in order to get [him] to enter this plea." *Id.* Hollis also acknowledged he was "completely

---

[3] At the same time, Hollis also pled guilty to an unrelated charge of aggravated battery in another case. *See, e.g.*, *id.* at 97.

satisfied with the services rendered by [his] attorney on [his] behalf in this case." *Id.* He understood that by pleading guilty, he gave up certain constitutional rights, including, but not limited to, the right to trial by jury, the right to require the State to prove its case beyond a reasonable doubt, and the right to appeal all matters relating to the issue of guilt or innocence. *Id.* Hollis acknowledged under oath in open court that he entered into the plea "freely and voluntarily" and that there were no other agreements, representations, or promises made by him, his attorney, the court, or any representative of the State. *Id.* at 39.

At the plea hearing on May 27, 2015, the State proffered a factual basis for the plea and Hollis's counsel "reserve[d] the right to discuss the facts in a different manner at the sentencing hearing." *Id.* at 135–38. The trial court found there was a sufficient factual basis to support Hollis's guilty plea in each of the charged offenses and accepted his plea as voluntarily given. *Id.* at 138, 144–46.

On June 4, 2015, in accordance with his plea, Hollis was adjudicated guilty on all three counts. *Id.* at 41, 108. The same day, he was sentenced as a Habitual Felony Offender (HFO) under Chapter 775.084, Fla. Stat., to a 25-year term of incarceration (a ten-year mandatory minimum) on Count One, concurrent with a 15-year term of incarceration (a three-year mandatory

minimum) on Count Two, and a 162-day term of incarceration on Count Three, with credit of 162 days for time served as to all three counts.  Resp. Ex. A1 at 111–17; Resp. Ex. A2 at 72–124 (transcript of June 4, 2015 sentencing proceedings).

On June 12, 2015,[4] Hollis filed a *pro se* Motion to Withdraw Guilty Plea for good cause pursuant to Florida Rule of Criminal Procedure 3.170(f).  Resp. Ex. A1 at 94–95.  He argued: (1) the sentence that was imposed exceeded the sentence that was contemplated by his plea agreement; (2) Hollis's trial counsel had promised he would not receive more than a 15-year sentence because Hollis had never been to prison; (3) "newly found evidence was found in video that exculpate[d] [him] from said burglary"; (4) Hollis's counsel "never brought a defense to the alleged charge" and pointed that Hollis was caught "red-handed"; and (5) Hollis's counsel waived a pre-sentence investigation (PSI).  *Id.* at 95.  The trial court denied this motion on September 14, 2015.  *Id.* at 97–104.

Hollis did not take a direct appeal of his sentences to the First District Court of Appeal.  However, on November 20, 2015 (mailbox rule[5]), Hollis filed

---

[4] The Motion was dated June 8, 2015.  Resp. Ex. A1 at 95.

[5] *See Haag v. State*, 591 So.2d 614, 617 (Fla. 1992) (holding that the "mailbox rule," under which a petition or notice of appeal filed by a *pro se* inmate is deemed filed at the moment in time when the inmate loses control over the document by

a *pro se* Motion to Correct Illegal Sentence pursuant to Florida Rule of Criminal Procedure 3.800(A). *Id.* at 151–52. He argued that his June 4, 2015 sentence did not comport with the court's oral pronouncement that the sentences would run concurrently with the sentence in the unrelated aggravated battery case. *Id.* at 152. The trial court agreed and granted the motion on December 15, 2016. *Id.* at 154–55.

On December 21, 2016 *nunc pro tunc* June 4, 2015, Hollis was sentenced as an HFO to a term of 25 years (with a ten-year mandatory minimum) as to Count One, to run concurrent with the term of 15 years (with a three-year mandatory minimum) as to Count Two and the term of 162 days as to Count Three, with credit of 162 days for time served as to all three counts. *Id.* at 44–50. The sentence would also run concurrent to the sentence in the aggravated battery case. *Id.* at 47.

On April 12, 2017 (mailbox rule), Hollis filed a *pro se* Motion for Post-Conviction Relief in the trial court, pursuant to Florida Rule of Criminal Procedure 3.850. *Id.* at 167. He raised three grounds for relief: (1) his guilty plea was based on mistaken advice by counsel as to the length of the sentence that would be imposed; (2) the State committed a *Brady* violation by failing to

---

entrusting its further delivery or processing to agents of the state, exists as a matter of Florida law and applies only to *pro se* petitioners who are incarcerated).

disclose the surveillance video of Gate Liquors to the defense; and (3) Hollis's plea was involuntary because the trial court failed to follow the dictates of Fla. R. Crim. P. 3.172(c) or discern whether Hollis understood the meaning of the HFO designation.  Resp. Ex. A1 at 167–80.  On August 31, 2018, the trial court denied Hollis's Motion for Post-Conviction Relief as to Grounds One and Two, and granted it in part as to Ground Three based on the State's failure to serve Hollis with a notice of intent to classify him as an HFO prior to his plea.  Resp. Ex. A1 at 188–91; Resp. Ex. A2 at 30.  Since the court vacated Hollis's June 4, 2015 sentences as to Counts One and Two, the trial court held resentencing proceedings on July 15, 2019, July 19, 2019, July 29, 2019, and August 8, 2019. Resp. Ex. A2 at 19–25, 28, 125–34 (transcript of the July 15, 2019 resentencing proceedings), 135–95 (transcript of the July 19, 2019 resentencing proceedings), 196–209 (transcript of the July 29, 2019 resentencing proceedings), 210–35 (transcript of the August 8, 2019 resentencing proceedings).

On August 8, 2019 *nunc pro tunc* June 4, 2015, Hollis was resentenced, not as an HFO, to a term of 25 years imprisonment (with a ten-year mandatory minimum) as to Count One, a term of 15 years imprisonment (with a three-year mandatory minimum) as to Count Two, and a term of 162 days as to Count Three, with credit of 162 days for time served for Counts One and Two.  *Id.* at

19–25, 51, 150, 231–32, 233 (stating the court did not deem Hollis to be an HFO).   The sentence imposed for Counts Two and Three would run concurrently to the sentence for Count One and to the sentence in the aggravated battery case.  *Id.* at 19–25, 51, 232.

On August 12, 2019, Hollis filed a Notice of Appeal as to the trial court's August 8, 2019 sentencing decision to the First District Court of Appeal.  *Id.* at 53–54, 64.   Hollis, through counsel, only challenged the presentation of testimony on the uncharged crime of aggravated assault on a police officer during the resentencing proceedings.  Resp. Ex. B at 3, 5, 12, 17; Resp. Ex. D at 3, 7–8.  On April 27, 2020, the First District Court of Appeal per curiam affirmed the trial court's decision without a written opinion.  Resp. Ex. E at 2. The mandate was issued on May 18, 2020.  Resp. Ex. E at 4.

## IV. ANALYSIS

Hollis's sole ground for habeas relief is premised upon a claim of ineffective assistance of counsel.  *See generally* Doc. 1.  He argues that his guilty plea was unknowing and involuntary because his attorney misadvised him on the remaining-in/intent element of burglary and the possible defense thereto.  *Id.* at 5.  Hollis contends that although the State presented no evidence at the plea hearing regarding Hollis's intent to commit a crime at the time he entered or remained in the structure, "[d]efense counsel explained that

because he 'remained in' the structure after waking up and formed the intent to steal, he was guilty of burglary and[,] because he was caught red-handed, there was no viable defense." *Id.* at 5–6.  Hollis further contends that the facts he "explained to [his] counsel, which are supported by video and available witness testimony, establish a viable afterthought / no[-]intent defense to burglary." *Id.* at 6.  According to Hollis, pursuant to Fla. Stat. § 810.02, the essential element of the "remaining[-]in" form of burglary charged requires proof of intent to commit theft at the time the "surreptitious" remaining-in is done, not as an afterthought.  *Id.*  Hollis states he told his attorney that "he never intended to rob the place or fall asleep therein." *Id.* at 5.  "Unfortunately, [when he woke up,] instead of just leaving, [Hollis] decided to take the opportunity to steal a few things on his way out." *Id.*; *see also* Resp. Ex. A1 at 54 (stating in defense counsel's sentencing memorandum that "Hollis made the unfortunate decision to take items inside the business" after he woke up).  He now argues: "Had it not been for counsel's deficient performance, [he would have pursued discovery and he] would not have entered the open plea, [but] instead [he would have] proceeded to trial pursuing a viable no[-]intent defense – likely resulting in an acquittal."  Doc. 1 at 7.  As such, counsel's "deficient performance [allegedly] prejudiced Petitioner." *Id.*

17

Respondents argue[6] that Hollis's claim is unexhausted and procedurally defaulted, and he has failed to show justifiable cause for his failure to properly present his claim to the state court or to show prejudice to overcome the procedural bar. *See* Doc. 4 at 8, 13–16. Since Hollis's claim was not properly raised in the trial court, Respondents point out that "trial counsel has not had the opportunity to give [her] side of the story as to what [s]he and [Hollis] discussed regarding possible defenses to the charged crimes," but the transcripts of the plea hearing and the sentencing hearing do not support Hollis's claim for relief. *Id.* at 17.

Hollis admits that his claim is unexhausted and procedurally barred. Doc. 1 at 7 ("This claim was not raised in the State court and Petitioner cannot now return to the State court to exhaust the claim because he is procedurally barred from doing so."). However, he seeks to overcome this procedural default by relying on *Martinez v. Ryan*, 566 U.S. 1 (2012), and arguing that he can show "cause" to excuse his default and "actual prejudice" because he did not have counsel during the post-conviction proceedings. Doc. 1 at 7–9.

Under *Martinez*, Hollis must prove more than the general assertion that the trial court did not appoint counsel in the initial-review collateral proceeding. 566 U.S. at 14. He must "also demonstrate that the underlying

---

[6] Respondents concede that the Petition is timely.

ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* (citations omitted); *see also Lambrix v. Sec'y Fla. Dept. of Corr.*, 851 F.3d 1158, 1164 (11th Cir. 2017). Conversely, his claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." 566 U.S. at 16. For the reasons that follow, the Court finds that even if Hollis shows that his lack of postconviction counsel caused his procedural default, he cannot show that his underlying ineffective-assistance-of-counsel claim is substantial.

First, at the plea hearing, Hollis testified under oath that he discussed the plea form with his attorney and she answered all of his questions. Resp. Ex. A1 at 122–23. Hollis also testified that he was satisfied with the services of his attorney, that there was nothing he asked her to do that she had not done, that he did not wish to discuss anything further with her before entering his plea, and that he had no complaints at all about the way his case had been handled up to that point. *Id.* at 132–33. After the trial court reviewed all of the constitutional rights that Hollis was waiving by entering a guilty plea, including the right to have the State prove the charges against him beyond a reasonable doubt in a jury trial, the right to confront and cross-examine the State's witnesses, the right to subpoena witnesses, and the right to appeal all

matters regarding his guilt or innocence, *id.* at 133–35, the State provided the

following pertinent factual basis for the plea:

> As to Case Number 16-2014-11741, the State would be prepared to prove that on Christmas Eve, that is on December 24th, 2014, at around 2:20 in the morning, the general manager of the Gate Liquors on Lem Turner Road received a call that an interio[r] motion alarm was going off in the bar area. The general manager called the night manager, who arrived at the store at the same time as the police.
>
> The manager went in the store to re-set the alarm, and when he heard a noise and observed the defendant in the bar area, the manager observed two rifles slung over the defendant's chest. The manager then ran from the store. The defendant also fled from the store. And, by the way, this is captured on video, both inside and outside the store.
>
> And upon exiting the store, the defendant was taken into custody by officers with the Jacksonville Sheriff's Office, specifically Officer S.A. Coleman and M.S. McKinney. At the time of arrest, he was wearing a dark hoodie, a mask over his face, and rubber gloves. In the process of doing this, the officer did shoot the defendant.
>
> Specifically, Your Honor, as alleged in the Information, as to Count 1, the defendant did therein commit a burglary while armed and while wearing a mask to the VHP Corporation, doing business as Gate Liquors, *with the intent to commit an offense therein*, and armed himself within the residence, or within the place, with the armed firearms as described. And as he was exiting, he was wearing a mask to conceal his identity.
>
> As to Court 2, . . . the defendant previously had been convicted of a felony, to wit, Oxycontin, trafficking in morphine and other assorted drugs in the Circuit Court, in the Fourth Judicial Circuit on August 25th, 2011.

> And also on that same day, December 24, 2014 in Duval County, when he was arrested, he did have possession of marijuana, to wit, less than 20 grams of marijuana.
>
> The defendant was arrested and he stated that he is homeless and *was looking for stuff to steal from the liquor store*. He stated that he was about to exit the back door when he saw someone. He stated, I had some guns around my neck that I found in there. I don't know what kind of gun it was[;] I just know that it was long. And, as stated, the video tape shows that he had two firearms with him, rifles.

*Id.* at 135–37 (emphasis added). While Hollis's counsel did not challenge the State's presentation of the facts at the plea hearing, she "reserve[d] the right to discuss the facts in a different manner at the sentencing hearing." *Id.* at 138.

The trial court found there was a sufficient factual basis to support the guilty plea in each of the charged offenses. *Id.* The State noted that previously "there was a defense offer of ten years, which the State rejected," and the State had not made any offers in the case. *Id.* at 142. After defense counsel confirmed it, she added that "it was never Mr. Hollis'[s] intention to go to trial, . . . just logistically [they] were trying to figure out how to best resolve this case." *Id.* at 143.

Based on the plea colloquy and other discussions with Hollis, the trial court accepted Hollis's guilty plea as voluntarily given, with a knowing, intelligent, and voluntary waiver of his rights. *Id.* at 144–46. Notably, Hollis's

solemn declarations during his plea colloquy carry a strong presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014) (stating that a defendant who makes statements under oath at a plea colloquy bears a heavy burden to show his statements were false).   Further, his representations at the plea hearing "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73–74; *see also Stano v. Dugger*, 921 F.2d 1125, 1152 (11th Cir. 1991) (recognizing that the record of the plea proceedings may contradict any subsequent claim that counsel's representation was deficient).

To the extent Hollis attempts to go behind his sworn representations made at the plea hearing, he cannot do so.  *See Stano v. State*, 520 So.2d 278, 279–80 (Fla. 1988) (per curiam) ("These claims regarding ineffectiveness of counsel's assistance and the involuntariness of Stano's plea are an attempt to go behind the plea."); *Ezer v. State*, 10 So.3d 1175, 1177 (Fla. 4th DCA 2009) ("A defendant cannot go behind his sworn assertions in a plea colloquy."); *Gidney v. State*, 925 So.2d 1076, 1076–77 (Fla. 4th DCA 2006) (per curiam) (finding that a defendant who was convicted pursuant to a plea could not go behind the plea and raise, in a postconviction motion, issues that were known when he entered the plea).  Hollis was clearly aware of his version of the facts

at the time he entered his plea.  *Jones v. State*, 680 So. 2d 585, 587 (Fla. 4th
DCA 1996).  If there was any discrepancy, he was obligated to speak up at the
plea hearing.  "He could not stand mute, accept the benefits of the plea, and
then collaterally attack its voluntariness on the basis of something that should
have been cleared up at the time of the plea."  *Id.*

Hollis states he told his attorney that "he never intended to rob the place
or fall asleep therein," but when he woke up, instead of just leaving, he "decided
to take the opportunity to steal a few things on his way out."  Doc. 1 at 5.
Hollis's counsel actually presented his version of the facts in her June 4, 2015
sentencing memorandum:

> On Christmas Eve 2014, Mr. Hollis went into Gate Liquors to get
> out of the rain as he had just recently become homeless.  Mr. Hollis
> fell asleep in the DJ booth of the club and when he woke up, the
> business was closed.  *At that point, Mr. Hollis made the
> unfortunate decision to take items inside the business, including
> but not limited to alcohol bottles, cash, and two guns owned by the
> business.*  As Mr. Hollis exited the building, he was shot at eight
> times, hit three times by Officer Coleman before being taken into
> custody and transported to Shands for rescue.

Resp. Ex. A1 at 54 (emphasis added).  The State responded to the defense
version of the facts as follows:

> Your Honor, I think it's important to enlighten the Court as to the
> specific facts about this armed burglary.  I briefly mentioned it at
> the time of the defendant entering his plea.

*But the defendant waited inside of the liquor store and concealed himself, waited for the manager and other employees to leave, for the alarm to be set, to then commit the burglary.*

*Now, in doing so, this was a person who went through the trouble of getting a mask and covering his face, also getting gloves.*

*So this isn't just - - as defense would portray, just a homeless man who just happened to fall asleep inside of a business and then just decided, since he was asleep in there, he might as well take something from the business. This is a person who planned this, calculated this, and went through the trouble of concealing himself.*
*. . .*

*The defendant was wearing a hoodie, had a mask covering his face, and also had gloves.*
*. . .*

Now, at the time the officer shot him, as is reflected in the other two photographs that are part of State's Exhibit 2, the defendant had on him, carrying, two firearms, two rifles.

I will note, as has been pointed out, I believe, by defense in their argument memorandum, those rifles, he did not take into the store. Those rifles were taken from the store. That is, they belonged to the store manager, the owner of the place. They had left them there for protection.
. . .

*. . . And he got those rifles and was taking them.*

*He had also, inside of the store, I would argue, planned to come back at some point, because he had piled some other stuff up, as i[f] he was going to come back and get additional stuff from the store, liquor bottles, et cetera.*

But the bottom line is, this defendant has committed an armed burglary while wearing a mask, and he is also a prior convicted felon.

Resp. Ex. A2 at 86–91 (emphasis added).  In response, Hollis's counsel stated:

> On Christmas Eve of 2014, [Hollis] had no place to be.  He was friends with a DJ, and her name was Taz, that worked at this Gate Liquors, which is actually kind of a bar/pub.  It has a couple of pool tables and different things, but it is also a liquor store.
>
> And Mr. Hollis went in and was speaking with DJ, Taz, and that's how he was allowed entry into this DJ booth.
>
> He wasn't exactly sure where he was going to stay that night.  He didn't have any plans.  He just knew that he had three small children, he was unemployed, couldn't live with their mother, and he wanted to provide for them Christmas morning.
>
> *So, unfortunately, that evening Mr. Hollis made some very poor choices.  He did fall asleep in the DJ booth, and when he woke up the place was vacant.*
>
> *At that point[,] he started rummaging around the shop and went through some things, gathering some liquor bottles, some cash, and the two weapons that you've seen in the photographs.*
> . . .
>
> *So at this point in time, this unfortunate decision that Mr. Hollis made was that he was going to take some of these items from the store and try to sell them.*
> . . .
>
> *It is the defense's position that he did not intend to conceal himself. He did end up inside of a property where he was not allowed to be. And that's something that he's accepted responsibility for.*
>
> He was wearing a hoodie, and he continues to tell me that he didn't actually have a mask on his face, that he had just pulled a T-shirt up and had the hoodie on, and that these gloves that you can see -- the purple gloves, in the photograph, that he was wearing, were actually gloves that were inside of the building.  And he has told me that they were inside of the DJ booth and that's why he put them on.

So it wasn't this conspiracy or this very well[-]thought-out plan. He just happened to find himself in this particular incident.  And these are the unfortunate choices that he made.

He was, in fact, in possession of two large firearms on that evening, which he is not allowed to be in position [sic] of.  But it is the defense's position that he had no intention of using these firearms to scare anybody or anything else.
. . .

When we first met, he intended on accepting responsibility for this crime immediately.  It was a question of making sure that certain things were tied up on the outside before he entered a plea, specifically with his children's mother, to make sure that his children had the opportunity to be provided for.  So that's why this has drug out a little bit.

But I've always been candid with the State that this case will not go to trial.  We will not proceed with discovery, based upon Mr. Hollis'[s] decision.

*Id.* at 108–11 (emphasis added).

After hearing counsel's representations, the trial court concluded that Hollis's crime was "a classic old-fashioned common law crime of burglary, stealthy -- sort of retaining [sic] -- remaining in a building is covered by the jury instruction, and then the taking of property from that in a stealthy manner."  *Id.* at 116.[7]  The trial judge also stated:

---

[7] In Florida, "burglary" is defined as:

. . .

Notwithstanding a licensed or invited entry, *remaining in* a dwelling, structure, or conveyance:
a. Surreptitiously, with the intent to commit an offense therein;

26

> It didn't seem that you were looking for firearm[s]. Maybe you were aware of them ahead of time, who knows? But as it's committed, then once you become armed with firearms, then it's the same, almost, as if you carried them in with you, it becomes armed burglary. And it is significant.

*Id.* The trial court specifically found that Hollis stealthily remained in the premises and then took property from the premises, in a stealthy manner, while armed. The facts presented were sufficient to meet the elements of armed burglary. *See Roberson v. State*, 841 So. 2d 490, 493 (Fla. 4th DCA 2003) ("The alternative way is to stealthily remain in the premises after first being admitted consensually and only after being first admitted[,] form the intent to commit an offense in the premises."); *Ellis v. State*, 425 So. 2d 201, 202 (Fla. 5th DCA 1983) (stating that under Fla. Stat. § 810.02, the State must allege and prove "specific intent" to commit any offense, but "the State's proof is

---

> b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
> c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.

Fla. Stat. § 810.02(1)(b)(2) (emphasis added). Further:

> Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084, if, in the course of committing the offense, the offender:
> . . .
> (b) Is or becomes armed within the dwelling, structure, or conveyance, with explosives or a dangerous weapon[.]

Fla. Stat. § 810.02(2).

almost always circumstantial" because it "rarely has direct proof as to the accused's exact objectives, motives and intentions").

Notably, in partially denying Hollis's Motion for Post-Conviction Relief, the trial court addressed Hollis's "misconception" that he cannot be convicted of burglary just because he may have entered the business while it was still open to the public.  Resp. Ex. A1 at 187.  The court explained that "[e]ven if [Hollis] had entered with permission at some point, as a customer of the business during open hours, it is nonetheless unlawful to remain in the business after hours with the intent to commit an offense therein."  *Id.* Although Hollis now argues that he did not have the intent to commit an offense until after he woke up and the business was already closed, there was sufficient evidence to support the burglary charge against him based on his remaining in the structure, surreptitiously, with the intent to commit an offense therein.   Thus, Hollis's counsel was not deficient for allegedly misadvising him on the remaining-in element, and, regardless, Hollis has not shown prejudice.  He has not shown a reasonable probability exists that but for counsel's alleged ineffectiveness, he would not have pled guilty and instead would have proceeded to trial.[8]

_____

[8] Hollis also argues that had it not been for his counsel's deficient performance, he would have pursued discovery.  However, the State noted on the record at the June 4, 2015 sentencing hearing that discovery had been provided.  Resp. Ex. A2 at 113. While the defense made a decision not to take depositions, *id.*, defense counsel made

Because Hollis cannot satisfy either prong of *Strickland*, he cannot rely on *Martinez* to excuse the procedural default of his claim. Likewise, Hollis has not demonstrated that failure to consider his claim on the merits will result in a fundamental miscarriage of justice. Ground One is unexhausted and procedurally defaulted, and is, therefore, denied.

To the extent Hollis attempts to raise new claims in his Reply, such claims are not properly before the Court. *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); *Herring v. Sec'y, Dep't of Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (collecting cases); *see also Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) (finding that a *pro se* litigant abandoned an issue that was not raised in his initial brief as the court does "not address arguments raised for the first time in a *pro se* litigant's reply brief").

Nevertheless, even if the Court would address the issues raised for the first time in Hollis's Reply, the outcome would be the same. First, the issue

---

it clear that they would "not proceed with discovery, based upon Mr. Hollis'[s] decision," *id.* at 111. By making an offer to the State, then deciding to plead guilty, and apparently telling his counsel that it was never his intention to go to trial, Resp. Ex. A1 at 143, Hollis "rendered any further investigation pointless." *Stano*, 520 So.2d at 280.

about the trial court's allegedly impermissible consideration of the uncharged crime of aggravated assault on a police officer during resentencing was decided by the First District Court of Appeal.  *See* Resp. Exs. B, C, D, E.  That decision was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings.  Further, Hollis's additional arguments—that his counsel misadvised him on the length of the sentence and that his waiver of a pre-sentence investigation was coerced—were addressed by the trial court in ruling on his Motion for Post-Conviction Relief and his Motion to Withdraw Guilty Plea, respectively.  *See* Resp. Ex. A1 at 104, 182–86.  Hollis did not appeal the trial court's decisions on these motions. Thus, these claims are unexhausted and procedurally defaulted, and Hollis has not shown either justifiable cause for his failure to properly present them to the state court or prejudice to overcome the procedural bar.  *See Nieves v. Sec'y, Fla. Dep't of Corrs.*, 770 F. App'x 520, 521 (11th Cir. 2019) (per curiam) ("In Florida, exhaustion usually requires not only the filing of a [Fla. R. Crim. P.] 3.850 motion, but an appeal from its denial.") (citation omitted).

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED** and this action is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment dismissing this action with prejudice and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability.[9] Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of July, 2024.

 

 

 

_____

BRIAN J. DAVIS

United States District Judge

---

[9] The court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller–El v. Cockrell,* 537 U.S. 322, 335–36 (2003) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Upon due consideration of the record as a whole, this Court will deny a certificate of appealability.

Jax-11 7/24
c:
Michael Hollis, #J36348
Counsel of Record